Cloyd v. Cloyd.

MARIA CLOYD *v.* THOMAS J. CLOYD *et al.*

REAL ESTATE. *Partition. Dower. Presumption of law.* Under a voluntary partition between a widow and her two children, of land descended from the husband and father, in which the widow receives one-third, including the dwelling-house and improvements, the presumption of law would be that the widow's allotment was in dower, and the execution by the parties at the time of a penal bond to abide the division would only strengthen the presumption.

FROM WASHINGTON.

Appeal from the Chancery Court at Jonesborough. H. C. SMITH, Ch.

H. H. INGERSOLL for complainant.

I. E. REEVES and S. J. KIRKPATRICK for defendants.

COOPER, J., delivered the opinion of the court.

The chancellor, upon final hearing, dismissed the bill in this case, and the Referees recommend an affirmance of the decree. Complainant excepts.

The exceptions of the complainant to the report of the Referees narrow the litigation to the claim of the complainants to dower and homestead in a 32 acre tract of land.   Many years ago, perhaps before the year 1840, David Winegar died intestate, leaving a widow, Rachel, and two children, James and Isabella.   He died seized and possessed of a tract of land of about 96 acres, on which he had lived for many years.   The widow and children continued to live together on the place until Isabella intermarried with William Cloyd, when the land was, under a written agreement between the parties, divided by the county surveyor and four neighbors selected by the parties, into three equal shares of about 32 acres each, the widow receiving the part on which were the dwelling-house and improvements, and each child taking possession of one of the other shares.   This division was made between 1840 and 1844.   James Winegar sold his 32 acres to a third person, and Cloyd built on his wife's 32 acres, and lived there until his death in August, 1873.   Isabella, his wife, died about 1853, leaving seven children by Cloyd. Afterwards Cloyd married the present complainant. The widow Winegar continued to live on the 32 acres allotted to her until shortly before her daughter's death, when she seems to have gone to Cloyd's house and lived there until her death, about 1855.   At some time, but when does not distinctly appear, James built a small house on the land allotted to his mother, but left after a short residence, and died intestate, without ever having been married.

The complainant, after having been turned out of the possession of the 32 acres allotted to Isabella, and on which Cloyd and she had continued to live, by a purchaser from the Cloyd children, filed this bill on September 12, 1879, claiming dower and homestead in the 32 acres allotted to Rachel Winegar. After Rachel went to live with Cloyd, and perhaps for years before, Cloyd had farmed these 32 acres and supported her. After her death, he continued to cultivate the land until his death, all of his children by his first wife for the greater part of the time, and some of them all the time, living with him. The contention of the complainant is that in the partition between the widow Winegar and her children it was agreed that the widow should take the one-third allotted to her in fee, and that she had agreed in writing to give her part of the land to Wm. Cloyd, after her death, in consideration of his supporting her during life. It is further insisted that Cloyd has been in possession of the land, which was enclosed, for twenty years, claiming it as his own adversely to all the world.

The question of adverse possession, in the absence of a writing, clothing Cloyd with the legal or equitable title to the land, can cut no figure in the case. For the possession of the father was the possession of the children who lived with him, and would inure to their benefit, there being no proof of any adverse holding by him brought home to them: *Fancher* v. *DeMontegre*, 1 Head, 40.

The complainant's claim rests, therefore, upon

Cloyd v. Cloyd.

Rachel Winegar having acquired, by the voluntary partition between her and her children, the fee of the thirty-two acres allotted to her. By law she took only a right to dower in her husband's lands, and inasmuch as she received exactly her dower interest under the partition, namely one-third thereof, with the dwelling-house and improvements attached, the presumption would be that she took the allotment in dower. The evidence should be clear and cogent to overcome this presumption, for the fee in the land allotted, with all the buildings, would be worth far more than a mere life estate therein. If any consideration had passed for the enlargement of the dower into a fee, or if the children had intended to make a gift to their mother, the fact would have been stated in the instrument shown to have been executed at the time, or mentioned in such a way as to impress itself upon the minds of the witnesses. Two witnesses testify to the writing and its contents; one of them thinks he was an attesting witness to its execution, and the other says he was one of the commissioners who made the division. Both of them agree that the instrument was a bond, signed by the parties, in a penalty binding them to "abide by the division" made by the persons selected. The deponent who thinks he was an attesting witness, adds: "There was nothing said in that division about the widow's dower, nor taking dower; nothing was mentioned about dower." The other witness says: "She (the widow) took one-third of the land as laid off to her. There was nothing said about her taking a

child's part. I don't know that this was to be her land absolutely; there was nothing said about its being a dower. It was just divided equally between the three." This testimony, it is obvious, does not show an allotment to the widow in fee. On the contrary, it does very conclusively establish that the sole object of the writing was to bind the parties to the division, and consequently the parties would only take such interest as was vested in them by law. Other witnesses, cognizant of the partition, do not hesitate to say that the allotment to the widow was only in dower. And two or three witnesses testify that Cloyd told them years afterward that he had James Winegar's bond for his interest in his mother's share of the land, thereby showing that Cloyd knew the fact that her interest was only for life. The complainant not only fails to make out the clear case required by law, but the evidence conclusively establishes the contrary.

In this view, it becomes unnecessary to analyze the testimony touching the alleged conveyance from Rachel Winegar to William Cloyd. Suffice it to say, that we concur with the chancellor and the Referees in the conclusion that the evidence fails to establish satisfactorily the execution of the instrument claimed. Confirm report, affirm decree, and dismiss the bill with costs.